FILED

UNITED STATES DISTRICT COURT  2017 SEP -6  PM 3:44
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

BEVELYN SAMUEL
   a/k/a "Diana Morgan"

CASE NO.   6:17-cr-211-0A-40DCI
18 U.S.C. § 641
18 U.S.C. § 1028A
18 U.S.C. § 1001

## INDICTMENT

The Grand Jury charges:

## COUNTS ONE THROUGH THREE
### (Theft of Government Property)

### A.   Introduction

At times material to this Indictment:

1.    The United States Department of Housing and Urban Development (HUD) was a department of the United States responsible for assisting citizens with their housing needs, including providing housing counseling and advice on purchasing homes, defaulting, foreclosures, and credit issues.

2.    HUD-Certified Counseling Agencies (HCAs) were a network of counseling agencies throughout the country that provided housing advice and tools to assist current and prospective homeowners in making financially responsible choices concerning their housing needs.   HCAs were approved,

supervised, and funded by HUD.   When HUD certified that a company or organization was an HCA, the HCA became eligible for other funding programs, including the National Foreclosure Mitigation Counseling (NFMC) program.

3.     The NFMC program was launched in December 2007 with funds appropriated by the United States Congress to address the nationwide foreclosure crisis, by dramatically increasing the availability of housing counseling for families at risk of foreclosure.   The NFMC program was administered by a congressionally chartered not-for-profit company named NeighborWorks America, which distributed funds to competitively selected grantee organizations that provided foreclosure counseling services, either directly or through sub-grantees.   The NFMC program would only award its funds to grantee or sub-grantee organizations that were HUD-approved HCAs.   The funds distributed through the NFMC program came from the Department of the Treasury, another department of the United States.

4.     The Florida Housing Finance Corporation (FHFC) was the state agency that administered the federal funds distributed through the NFMC program in the State of Florida.

5.     HCAs that provided foreclosure counseling to Florida homeowners could apply to receive grant payments from the NFMC program, by e-mailing itemized invoices to an FHFC representative.   These electronically submitted itemized invoices contained the names of homeowners that the HCA had counseled for a particular round of funding, as well as the type of counseling provided to the homeowners, the property addresses that were under foreclosure, the counseling intake dates, the total hours of counseling provided, and the counseling outcome dates.   The type of counseling reimbursable to HCAs through the NFMC program included "Level 1 Counseling" (over-the-phone counseling), which was reimbursed at a rate of $150 per client, and "Level 2 Counseling" (face-to-face counseling), which was reimbursed at a rate of $300 per client.

6.     A means of identification included a person's name.

7.     Reliable Business Solutions, Inc., (RBS) was a Florida corporation that operated in Orange County, Florida, and purported to provide housing and foreclosure counseling services to its clients.   RBS was also designated by the Internal Revenue Service as a nonprofit organization, under 26 U.S.C. § 501(c).

3

8.     **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** was the owner, registered agent, president, and chief operator of RBS.

9.     RBS was an HCA that applied for, and received, federal grants via the NFMC program.

10.     As the owner and chief operator of RBS, **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** executed NFMC Sub-Grantee agreements.   In these Sub-Grantee agreements, **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** agreed to provide foreclosure counseling services to Florida homeowners, on behalf of the FHFC, in exchange for receiving payments. **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** further agreed in these Sub-Grantee agreements to establish and maintain sufficient records justifying the reimbursement or payment requests submitted to the NFMC program via the FHFC, for a minimum of three years after the final payment or submission of the final reimbursement request.

11.     In order to receive these federal funds from the NFMC program, **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** submitted to the FHFC, via e-mail, the type of itemized invoices discussed above.   As noted, these itemized invoices included the means of identification for the homeowners who received counseling, as well as the nature of the counseling services

4

rendered.   Once these reimbursement or payment requests were submitted and approved, RBS received payments from the FHFC in the amounts requested.   **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** elected to have these payments sent from the FHFC to bank accounts she controlled in the name of RBS.

12.   **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** created and established an alter ego named "Diana Morgan," who was, in truth, not a real person, and was in fact **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** acting under a false identity.   **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** also created and established an RBS e-mail account under the name "Diana Morgan," which she used to communicate with other employees of RBS, as well as representatives of HUD and the FHFC.

13.   **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** falsely represented to other employees of RBS, as well as representatives of HUD and the FHFC, that "Diana Morgan" was working for RBS remotely from another state, when in truth and in fact, no such individual worked for RBS. **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** also introduced an individual to other employees of RBS and claimed that said individual was

5

"Diana Morgan," when in truth and in fact, no such employee named "Diana Morgan" existed.

14.    **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** fraudulently obtained grant and reimbursement payments from the NFMC program, by electronically submitting the type of itemized invoices discussed above for foreclosure counseling services that RBS never performed.   **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** submitted these invoices to an FHFC representative using the RBS e-mail account she established under the name "Diana Morgan."   These invoices were fraudulent in that they listed the names of homeowners who were never clients of RBS and who never received foreclosure counseling from RBS.   **BEVELYN SAMUEL, a/k/a "Diana Morgan,"** also caused the fraudulently obtained grant and reimbursement payments to be deposited into bank accounts that she controlled.

### B. The Thefts

15.    On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**BEVELYN SAMUEL,**
**a/k/a "Diana Morgan,"**

did knowingly and willfully embezzle, steal, purloin, and convert to the defendant's use and the use of another, more than $1,000 of money and a

6

thing of value of the United States and the Department of the Treasury, a

department and agency of the United States, that is, payments made via the

National Foreclosure Mitigation Counseling program to the Florida Housing

Finance Corporation for foreclosure counseling services that were never

performed, with intent to deprive the United States and the Department of the

Treasury of the use and benefit of the money and thing of value:

| Count | Date | Fraudulent Invoice Description |
|-------|------|-------------------------------|
| ONE | January 17, 2013 | Invoice #R6 Q1 S4 (Reimbursement S4), containing false and fraudulent information, in that it listed the names of homeowners who were never clients of RBS and who never received foreclosure counseling from RBS. |
| TWO | January 22, 2013 | Invoice #R6 Q1 S5 (Reimbursement S5), containing false and fraudulent information, in that it listed the names of homeowners who were never clients of RBS and who never received foreclosure counseling from RBS. |
| THREE | January 24, 2013 | Invoice #R6 Q1 S6 (Reimbursement S6), containing false and fraudulent information, in that it listed the names of homeowners who were never clients of RBS and who never received foreclosure counseling from RBS. |

All in violation of 18 U.S.C. § 641.

## COUNT FOUR
**(Aggravated Identity Theft)**

16.     On or about January 17, 2013, in the Middle District of Florida,

and elsewhere, the defendant,

**BEVELYN SAMUEL,**
**a/k/a "Diana Morgan,"**

did knowingly possess and use, without lawful authority, a means of

identification of another person, specifically, the names of individuals with the

initials of "A.G.," "A.L. #1," "A.L. #2," "B.J.," "M.K.," "M.L.," "M.M.,"

"T.M.," and "J.Y.," during and in relation to a felony violation of theft of

government property, in violation of 18 U.S.C. § 641, as charged in Count

One of this Indictment, knowing that such means of identification belonged to

an actual person.

In violation of 18 U.S.C. § 1028A.

## COUNT FIVE
**(Aggravated Identity Theft)**

17.     On or about January 22, 2013, in the Middle District of Florida,

and elsewhere, the defendant,

**BEVELYN SAMUEL,**
**a/k/a "Diana Morgan,"**

did knowingly possess and use, without lawful authority, a means of

8

identification of another person, specifically, the names of individuals with the initials of "A.P.," "D.P.," "F.P.," "G.P.," and "R.R.," during and in relation to a felony violation of theft of government property, in violation of 18 U.S.C. § 641, as charged in Count Two of this Indictment, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. § 1028A.

## COUNT SIX
### (Aggravated Identity Theft)

18.     On or about January 24, 2013, in the Middle District of Florida, and elsewhere, the defendant,

**BEVELYN SAMUEL,**
**a/k/a "Diana Morgan,"**

did knowingly possess and use, without lawful authority, a means of identification of another person, specifically, the names of individuals with the initials of "A.G.," "C.S.," "E.S.," "J.S.," "K.S.," "Y.S.," "A.T.," "C.T.," "J.T. #1," "J.T. #2," "J.T. #3," "M.T.," "P.T. #1," "P.T. #2," and "D.U.," during and in relation to a felony violation of theft of government property, in violation of 18 U.S.C. § 641, as charged in Count Three of this Indictment, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. § 1028A.

## COUNT SEVEN
**(False Statement to a Federal Agency)**

19.     On or about July 10, 2014, in the Middle District of Florida, and elsewhere, the defendant,

**BEVELYN SAMUEL,
a/k/a "Diana Morgan,"**

did, in a matter within the jurisdiction of the executive branch of the government of the United States, that is, the Department of Housing and Urban Development, an agency of the United States, did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact, and did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit:   during an interview with a Special Agent from HUD's Office of the Inspector General, the defendant concealed that "Diana Morgan" was in truth not a real person and was in fact the defendant acting under a false identity; and the defendant falsely and fraudulently claimed that "Diana Morgan" was a real person who was an employee of RBS, when, in truth and in fact, and as the defendant then and there well knew, "Diana Morgan" was not a real person.

In violation of 18 U.S.C. § 1001(a)(1) and (2).

10

## FORFEITURE

1.      The allegations contained in Counts One through Three of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 641, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      The property to be forfeited includes, but is not limited to, the following:   a money judgment in the amount of $136,950, which sum represents the proceeds obtained from the violation.

4.      If any of the property described above, as a result of any act or omission of the defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

e.   has been commingled with other property which cannot be

divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the

provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

_Catherine Wasson_
Foreperson

W. STEPHEN MULDROW
Acting United States Attorney

By: _____
Andrew C. Searle
Assistant United States Attorney

By: _____
Katherine M. Ho
Assistant United States Attorney
Chief, Orlando Division

12

FORM OBD-34
APR 1991

No.

UNITED STATES DISTRICT COURT
Middle District of Florida
Orlando Division

THE UNITED STATES OF AMERICA

vs.

BEVELYN SAMUEL,
a/k/a "Diana Morgan"

INDICTMENT

Violations:

18 U.S.C. § 641
18 U.S.C. § 1028A
18 U.S.C. § 1001

A true bill,

_Catherine Watson_
Foreperson

Filed in open court this 6th day

of September, 2017.

_____
Clerk

Bail   $ _____

GPO 863 525